**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| KENNEDY FUNDING, INC., AS AGENT<br>FOR CERTAIN CO-LENDERS,<br><br>        Plaintiff,<br>    v.<br><br>ORACLE BUSINESS DEVELOPMENTS, LLC,<br>A VIRGIN ISLANDS LIMITED LIABILITY<br>COMPANY, JOSEPH JAGRUP, MEINRAD<br>JAGRUP, MARY JAGRUP, THE INTERNAL<br>REVENUE SERVICE OF THE UNITED STATES<br>OF AMERICA, ERIC A. CANTON AND<br>ELAINE S. CANTON,<br><br>        Defendants, | Civil Action No. 2012-0009 |

Attorneys:
**Matthew J. Duensing, Esq.,**
St. Thomas, U.S.V.I.
    *For Plaintiff*

**Nizar A. Dewood, Esq.,**
St. Croix, U.S.V.I.
    *For Defendants Meinrad Jagrup and Mary Jagrup*

**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Internal Revenue Service*

**Edward H. Jacobs, Esq.,**
St. Croix, U.S.V.I.
    *For Defendants Eric A. Canton and Elaine S. Canton*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Default and Summary Judgment" filed by Plaintiff Kennedy Funding, Inc., as Agent for Certain Co-Lenders ("Kennedy"). (Dkt. No. 81). The Motion seeks default judgment for debt and foreclosure against

Defendants Oracle Business Developments, LLC, a Virgin Islands Limited Liability Company ("Oracle"), Joseph Jagrup, Meinrad Jagrup, and Mary Jagrup, and summary judgment determining the priority of liens as to Defendants The Internal Revenue Service of the United States of America ("IRS"), and Eric A. Canton and Elaine S. Canton (the "Cantons" or the "Canton Defendants"). *Id.*

As discussed below, the Court will deny Plaintiff's Motion for Default Judgment against Meinrad and Mary Jagrup because it fails to set forth with particularity how the amounts claimed were calculated. The Court will also deny Plaintiff's Motion for Default Judgment against Joseph Jagrup because the Complaint in this action does not seek judgment against him. The Court will permit Kennedy to submit supplemental filings addressing the deficiencies in its submissions. Finally, the Court will grant Plaintiff's Motion for Summary Judgment as to the priority of liens.

## I.  BACKGROUND

On January 31, 2012, Kennedy filed a Complaint against all of the Defendants, alleging causes of action for debt, foreclosure of real property mortgage, enforcement of UCC lien, enforcement of security agreement, and seeking judgment on the priority of liens. (Dkt. No. 1).

The Complaint provides that Oracle has an ownership interest in certain property located on St. Croix, U.S. Virgin Islands, that is mortgaged to Kennedy. *Id.* ¶ 5. The Complaint alleges that, on September 19, 2008, Defendant Oracle executed a promissory note (the "Note") in which it promised to repay Kennedy the principal amount of $820,000.00, together with interest at variable rates and according to the timeline provided in the Note, with interest-only payments due upon commencement of the loan (the "Loan") and continuing thereafter. *Id.* ¶ 12.[1] Repayment of the Note, as well as repayment of all other indebtedness to Kennedy incurred by

---

[1] The Note was signed by Meinrad Jagrup as Manager of Oracle. (Dkt. No. 83-1).

Oracle, was secured by a Mortgage and Security Agreement on real property, executed on September 19, 2008 (the "Coakley Mortgage") covering the premises described in the Warranty Deed as:

> Plot No. 73 of Estate Castle Coakley, Queen Quarter, consisting of 1.0 U.S. acre, more or less, as more fully shown and described on OLG Drawing No. 3260, dated March 12, 1976, revised May 17, 1982.

*Id.,* ¶ 14; Dkt. No. 91-2 (the "Coakley Mortgaged Property"). [2]

The Complaint further alleges that repayment of the Note, as well as other indebtedness to Kennedy that Meinrad Jagrup and Mary Jagrup may incur, was also secured by a Mortgage and Security Agreement executed on September 19, 2008 (the "Hope Mortgage") from Meinrad and Mary Jagrup to Kennedy. (Dkt. No. 1, ¶ 15). The Complaint provides that Kennedy's "Hope Mortgage is a First Priority Mortgage pursuant to the Subordination Agreement between Eric. A. Canton and Elaine S. Canton and Kennedy Funding Inc. dated September 19, 2008[.]" *Id.* The Hope Mortgage covers the premises described in the Warranty Deed as:

> Plot No. 34 (1.29 U.S. acres more or less); of Estate Hope, Prince Quarter, as more fully described on PWD No. 5024, dated March 15, 1996.

(Dkt. No. 91-1) (the "Hope Mortgaged Property").

According to the Complaint, repayment of the Note, and other indebtedness to Kennedy that Oracle may incur, was also secured by: (1) an unlimited personal Guaranty (the "Guaranty") executed on September 19, 2008 by Joseph Jagrup and Meinrad Jagrup (Dkt. No. 1, ¶ 16); (2) a Loan and Security Agreement executed on September 19, 2008 by Meinrad Jagrup on behalf of

---

[2] The Coakley Mortgaged Property is owned by Oracle; the Mortgage was signed by Meinrad Jagrup as Manager of Oracle. (Dkt. No. 1, ¶ 5; Dkt. No. 83-2; Dkt. No. 91-2).

3

Oracle (the "Security Agreement"), *id.* ¶ 17;[3] (3) an Assignment of Licenses, Contracts, Plans, Specifications, Surveys, Drawings and Reports executed on September 19, 2008 by Meinrad Jagrup on behalf of Oracle (the "Assignment of Licenses"), *id.* ¶ 20; and (4) an Assignment of Leases and Rents executed on September 19, 2008 by Meinrad Jagrup on behalf of Oracle (the "Assignment of Leases"). *Id.* ¶ 21. The Complaint alleges that repayment of the Note, and any indebtedness to Kennedy that Meinrad and Mary Jagrup may incur, was further secured by an Assignment of Rents and Leases executed on September 19, 2008 by Meinrad Jagrup individually and Mary Jagrup individually. *Id.* ¶ 22.

The Complaint alleges that Oracle failed to make the interest payments required by the Note and Loan, despite demand; Oracle was in default under those instruments as well as both Mortgages; and Meinrad and Mary Jagrup failed to comply with the terms and conditions of the Guaranty and were in default under that instrument for failing to pay amounts owed on behalf of Oracle when due. *Id.* ¶¶ 23-27.[4] Pursuant to the terms of the Note, Mortgages, Guaranty and Loan, Kennedy elected to declare the entire principal sum with all unpaid accrued interest and late charges immediately due and payable. *Id.* ¶ 28. Accordingly, Kennedy alleges it is owed $1,148,936.30 to January 31, 2012; with late charges and interest continuing to accrue pursuant to the terms of the Note until the date of judgment; and with interest accruing at the judgment

---

[3] According to the Security Agreement, Oracle granted Kennedy a security interest in all accounts and property owned by Oracle, whether or not affixed to the Coakley Mortgaged Property, as well as to all proceeds and profits received therefrom and as further specified in Section 4 of the Security Agreement. (Dkt. No. 1, ¶ 18). The properties described in Section 4 of the Security Agreement were "secured by a perfected UCC-1 Financing Statement in Kennedy's favor." (*Id.*, ¶ 19).

[4] The Complaint mistakenly alleges that Meinrad and Mary Jagrup failed to comply with the terms of the Guaranty. (Dkt. No. 1, ¶ 27). However, the Complaint earlier alleges—correctly—that Meinrad and Joseph Jagrup signed the Guaranty. *Id.* ¶ 16.

4

rate thereafter. *Id.* Kennedy further asserts that, during the pendency of the legal action and prior to the foreclosure sales of the Coakley and Hope Properties, it may be required to pay real property taxes, insurance premiums, and other charges with respect to those premises, which become part of the principal indebtedness for which it is entitled to be reimbursed. Kennedy also claims that it is entitled to be reimbursed for costs and fees, including reasonable attorney's fees, as a result of protecting its legal rights. *Id.* ¶ 29.

The Cantons are identified in the Complaint as junior lienholders in the Hope Mortgaged Property, *id.* ¶¶ 9, 10, and the IRS is named as a Defendant because it allegedly had a recorded lien against the Coakley Mortgaged Property, *id.* ¶ 11.

Kennedy seeks judgment against "Oracle, Meinrad Jagrup and Mary Jagrup, jointly and severally, for all unpaid principal, interest, and charges due and payable on the Note and Loan as of the date of judgment, plus interest accruing thereafter until the judgment is satisfied," *id.* at 6[5]; a declaration enforcing and foreclosing its first priority liens on both the Coakley and Hope Mortgaged Properties; a determination of the priority of liens and foreclosure of all junior liens; enforcement and foreclosure of its Security Agreement and UCC-1 lien under its perfected UCC Financing Statement, *see supra* n.3; possession of the property described in Section 4 of the UCC-1 Agreement, *id.*; a "personal judgment against Oracle, Meinrad Jagrup and Mary Jagrup, jointly and severally, for any deficiencies remaining if this judgment is not satisfied after [foreclosure] sales"; enforcement of the Assignment of Licenses and the Assignment of Leases; and interest, costs, and attorney's fees. *Id.* at 6-7.

---

[5] While the Complaint seeks judgment against Oracle, Meinrad Jagrup and Mary Jagrup (Dkt. No. 1 at 6), the Motion for Default Judgment seeks judgment against Oracle, Meinrad Jagrup, Mary Jagrup, and Joseph Jagrup. (Dkt. No. 81).

Eric A. Canton and Elaine S. Canton were served with the Summons and Complaint on February 13, 2012 (Dkt. Nos. 15, 16); the IRS was served on February 3, 2012 in the Virgin Islands (Dkt. No. 19) and February 8, 2012 in Washington, D.C. (Dkt. No. 14), and February 22, 2012 in Puerto Rico (Dkt. No. 39); Joseph Jagrup and Mary Jagrup were served on February 9, 2012 (Dkt. Nos. 17, 18); Meinrad Jagrup was served on March 1, 2012 (Dkt. No. 20); and Oracle was served on March 1, 2012 (Dkt. No. 21), and with an Amended Summons on August 2, 2012. (Dkt. No. 47).

On March 2, 2012, the Cantons filed an Answer to the Complaint in which they admitted, *inter alia*, that they are junior lienholders on the Hope Mortgage. (Dkt. No. 13, ¶¶ 9, 10).[6]

The IRS filed an Answer on April 3, 2012, in which it stated that it has a federal tax lien against the Coakley Mortgaged Property for $5,865.15 in unpaid employment taxes. (Dkt. No. 22). It acknowledged that it held the status of a "junior lienholder." *Id.* ¶ 8.

Defendants Oracle, Joseph Jagrup, Mary Jagrup and Meinrad Jagrup did not answer Kennedy's Complaint. On July 11, 2012, Kennedy filed an Application for Entry of Default against these four Defendants. (Dkt. No. 40). The Clerk of Court entered default against Meinrad Jagrup and Joseph Jagrup on July 12, 2012 (Dkt. Nos. 42, 43); Mary Jagrup on July 13, 2012 (Dkt. No. 41); and Oracle on October 4, 2012 (Dkt. No. 50).

---

[6] The Cantons also filed a Cross-Claim against Oracle, Meinrad Jagrup and Mary Jagrup, and a Third Party Complaint against Winsbert Jagrup. (Dkt. Nos. 13-1, 13-2). Elaine Canton filed an Amended Answer, Amended Cross-Claim, and Amended Third Party Complaint on October 1, 2013. (Dkts. No. 71, 72, 73). In her Amended Answer, Elaine Canton admitted that Kennedy held a first priority lien on the Hope Mortgaged Premises. (Dkt. No. 71, ¶ 10). On December 9, 2013, Elaine Canton filed a Motion for Summary Judgment against Oracle, Meinrad Jagrup, Mary Jagrup, and Winsbert Jagrup based on her Amended Cross-Claim and Amended Third Party Complaint. (Dkt. No. 79).

On February 22, 2013, Attorney Nizar DeWood filed a Notice of Appearance on behalf of Mary Jagrup. (Dkt. No. 54). After Defendant Elaine Canton filed an Amended Answer, Amended Third Party Complaint, and Amended Cross-Claim in September 2013, Attorney DeWood filed an Answer to the Amended Cross-Claim on behalf of Mary Jagrup and Meinrad Jagrup in October 2013. (Dkt. No. 74). However, Attorney DeWood never challenged the entry of default against Mary Jagrup and Meinrad Jagrup on Kennedy's Complaint.

On April 12, 2013, Kennedy filed a "Notice of Abandonment," informing the Court that the Chapter 7 Trustee in Oracle's case before the District of the Virgin Islands Bankruptcy Court indicated that he was abandoning the bankruptcy estate's interest in certain real property. The property was not identified in the document. (Dkt. No. 57-1). The Court has determined from the Bankruptcy Court docket in *In re Oracle Business Developments, LLC*, No. 12-BK-10012, that the Notice of Abandonment concerned the Coakley Mortgaged Property. (Dkt. No. 10 in 12-BK-10012).[7]

On December 10, 2013, Kennedy filed the instant Motion for Default Judgment against Defendants Oracle, Joseph Jagrup, Meinrad Jagrup and Mary Jagrup, and Motion for Summary Judgment determining the priority of liens as to Defendants IRS, Eric Canton, and Elaine Canton. (Dkt. No. 81). In support of its Motion, Kennedy filed a Memorandum of Law (Dkt. No. 82), and a Statement of Undisputed Facts (Dkt. No. 83), which contained an Affidavit and Memorandum of Costs in support of costs and attorney's fees by Kennedy's counsel, Matthew J. Duensing, Esq. (Dkt. Nos. 83-12, 83-13, 83-14). In May 2014, Kennedy filed a supporting Affidavit of its bookkeeper, Kim Vaccarella, which had been inadvertently omitted from its Motion for Default and Summary Judgment. (Dkt. No. 86).

---

[7] The bankruptcy case was closed on October 29, 2013. (Dkt. No. 20 in 12-BK-10012).

In its Memorandum of Law, Kennedy argues that Oracle owns the Coakley Mortgaged Property, and Meinrad Jagrup and Mary Jagrup own the Hope Mortgaged Property; Oracle, Joseph Jagrup, Meinrad Jagrup, and Mary Jagrup used these properties to secure funding received from Kennedy; and these four Defendants have failed to comply with the terms and conditions of the loan documents related to the Coakley and Hope Mortgaged Properties, as well as the personal Guaranty of Joseph and Meinrad Jagrup, and therefore are in default under those instruments for failing to pay principal and interest when due. (Dkt. No. 82 at 2). Specifically, Kennedy asserts that Oracle, by and through Joseph, Mary, and Meinrad Jagrup, is in default under the terms of the Note secured by the Coakley Mortgage, the Security Agreement, the Assignment of Leases, the Assignment of Licenses, and the Guaranty. *Id.* at 4. Kennedy also claims that the record shows that Joseph and Meinrad Jagrup are in default under the terms of the Guaranty. Under the terms of these documents, Kennedy argues that it has the right to recover all money due from the respective parties and to foreclose on the Coakley and Hope Mortgaged Properties in satisfaction of the debt it is owed. *Id.* Kennedy also contends that it may have to pay real property taxes, insurance premiums and similar charges during the pendency of the action and prior to the foreclosure sale, which will become part of the principal indebtedness. *Id.*

Kennedy argues that it should be awarded summary judgment against the Cantons and the IRS on the priority of its liens, claiming that "[t]he IRS and the Cantons do not dispute Kennedy's first priority status as to the Coakley and Hope Mortgages and Security Agreements." *Id.* at 5. Specifically, Kennedy asserts that the Cantons signed a Subordination Agreement in which they admitted that their lien on the Hope Mortgaged Property was second in priority after Kennedy's first lien on the property, and that the Cantons admitted junior lienholder status in paragraphs 9 and 10 of their Answer and their affirmative prayer for relief. *Id.* Moreover, in the

Cantons' First Amended Answer, Eric Canton claimed he assigned his interest in their mortgage to Elaine Canton, while still admitting that Elaine Canton remained a junior lienholder. *Id.* In addition, Kennedy asserts that the IRS admitted—in its Answer to Kennedy's Complaint—that Kennedy's loan takes priority over IRS' recorded lien for unpaid taxes against the Coakley Mortgaged Property. *Id.* Attached to its Statement of Undisputed Material Facts in Support of Motion for Summary Judgment and Default Judgment, Kennedy provides copies of the pertinent loan documents. (Dkt. No. 83).

In her Affidavit, Kim Vaccarella, the Kennedy bookkeeper, stated that she had reviewed the September 19, 2008 Note, the Coakley and Hope Mortgages, and other loan documents regarding Oracle's indebtedness to Kennedy. (Dkt. No. 86-1). She averred that Oracle, Joseph Jagrup, Mary Jagrup, and Meinrad Jagrup are indebted to Kennedy in the total amount of $1,519,519.64 as of October 31, 2013, comprised of $820,000.00 in principal and $699,519.64 in interest, with interest continuing to accrue at the rate of $569.44 per diem. *Id.*

In the Affidavit of counsel in support of costs and attorney's fees, Attorney Duensing averred that his billing rate was $300.00 per hour; Christopher A. Brookhart's billing rate was $225.00 per hour; Sandra LaPlace's billing rate was $185.00 per hour; Tracy Myer's billing rate was $225.00 per hour; Georgina Nichols' billing rate was $125.00/$135.00 per hour; and Brenda Gibs' flat fee for foreclosure searches was $175.00 and her billing rate was $150.00 per hour. (Dkt. No. 83-13).[8] He attached billing records showing that the total time spent on this matter was 183.40 hours from March 2, 2011 through September 27, 2013; that the total amount of

---

[8] Attorney Duensing later identified the positions held by the individuals who worked on this case: Christopher Brookhart and Tracy Myers are Associate Attorneys; Sandra LaPlace and Georgina Nichols are Legal Assistants; and Brenda Gibs is a Title Abstractor. (Dkt. No. 91-7).

attorney's fees incurred was $44,290.12; and that the total amount of costs expended was $2,643.46. *Id.*; Dkt. No. 83-14.

In a Renewed Motion for Ruling on its Motion for Summary and Default Judgment, Kennedy stated that Defendant Elaine S. Canton reported that the Jagrup Defendants have entered "the property" and removed large and valuable fixtures and equipment, damaged the property, and interfered with the business of the remaining commercial tenant. (Dkt. No. 88).

On April 20, 2015, the Court ordered Kennedy to file supplemental documentation in support of its Motion for Default and Summary Judgment. (Dkt. No. 89). On May 18, 2015, Kennedy filed: deeds showing ownership of the properties at issue; a copy of the notification of default sent by Kennedy to Joseph Jagrup at Oracle; a Supplemental Affidavit by Ms. Vaccarella; Military Status reports for the individual defaulting Defendants; and an analysis of the default judgment factors pursuant to *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). (Dkt. No. 91). Kennedy also provided the date of default—March 1, 2010. *Id.*

In her Supplemental Affidavit (Dkt. No. 91-4), Ms. Vaccarella explained that the original principal amount of $820,000.00 remains fully due and owing as the defaulting Defendants made payments only toward interest, not principal, and that, as of October 31, 2013, interest in the amount of $699,519.64 was calculated as shown on line 83 of an attached spreadsheet. (Dkt. No. 91-5). Ms. Vaccarella added that, as of May 31, 2015, the defaulting Defendants owed $1,844,102.97, comprised of $820,000.00 in principal and $1,024.102.97 in interest, with interest continuing to accrue at $569.43 per diem. (Dkt. No. 91-4).

On September 29, 2015, Kennedy filed an "Emergency Request for Ruling on Motion for Summary and Default Judgment or, in the Alternative, Hearing on the Motion." (Dkt. No. 92). In that Motion, Kennedy again asserted that Defendant Elaine S. Canton had informed Kennedy

that "the Defendants have entered upon the property and removed valuable fixtures and equipment, which they are not permitted to do under the loan documents. Such actions have damaged the subject property and interfered with the business of the remaining commercial tenant." *Id.*

## II. APPLICABLE LEGAL PRINCIPLES

### A. Default Judgment

Federal Rule of Civil Procedure 55 sets forth the conditions under which a court may enter default judgment. To obtain a default judgment, the moving party must first seek an entry of default under Rule 55(a).[9] Once default is entered, the party may seek a default judgment from the Court pursuant to Rule 55(b)(2).

In an application for default judgment, "'the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant[.]'" *Star Pacific Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Parties are not entitled to default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Catanzaro v. Fischer,* 570 F. App'x 162, 165 (3d Cir. 2014); *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951).

An application for default judgment must contain evidence, by affidavits and/or documents, of the following:

---

[9] Rule 55(a) provides that the clerk of court must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).

(1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the [Servicemember's] Civil Relief Act.

*Bank of Nova Scotia v. Abdallah,* 2013 WL 5312399, at *5 (D.V.I. Sept. 23, 2013) (quoting *Idewu v. Sealey*, 2012 U.S. Dist. LEXIS 36783, at *6 (D.V.I. Mar. 19, 2012)); *see also* Fed. R. Civ. P. 55(b); *Island Yacht Charters, Inc. v. Malgaglio,* 2009 WL 1507406, at *1 (D.V.I. May 28, 2009). Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to [defendant's] culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *United States v. $55,518.05 in U.S. Currency*, 528 F.2d 192, 195 (3d Cir. 1984)).

## B. Summary Judgment

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Klein v. Weidner,* 729 F.3d 280, 283 (3d Cir. 2013) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Hart v. Electronic Arts, Inc.,* 717 F.3d 141, 148 (3d Cir. 2013) (internal quotation marks omitted). The non-moving party "'must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations, general denials, or [ ] vague statements.'" *Patterson v. Glory Foods, Inc.*, 555 F. App'x 207, 211 (3d Cir. 2014) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)).

When determining the priority of liens, the Virgin Islands is a race notice jurisdiction. *Brodhurst v. Frazier*, 2012 WL 8123137, at *4 (V.I. Sept. 12, 2012). This means that "'as between two competing parties[,] the interest of the party who first records the instrument will prevail.'" *Moco Investments, Inc. v. United States*, 362 F. App'x 305, 309 (3d Cir. 2010) (citation omitted); *see also Balbo Corp. v. Enighed Condominiums, LLC*, 2013 WL 978976, at *3 (V.I. Super. Mar. 8, 2013) ("In the Virgin Islands, the priority of liens is determined by the timing of the recordation of the liens.").

## III. ANALYSIS

### A. Default Judgment against Oracle, Mary Jagrup and Meinrad Jagrup

Kennedy has satisfied all but one of the requirements necessary to obtain a default judgment against defaulting Defendants Oracle, Mary Jagrup, and Meinrad Jagrup. Kennedy has shown that: (1) default was entered against these three defaulting Defendants by the Clerk of Court (Dkt. Nos. 41, 42, 50) and (2) these defaulting Defendants were validly served with process. (Dkt. Nos. 18, 20, 47). In addition, Kennedy has provided copies of Military Status Reports from the Department of Defense Manpower Data Center showing that Mary Jagrup and Meinrad Jagrup are not in the military service as defined in the Servicemember's Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.* (Dkt. No. 91-6). Although Kennedy did not affirmatively show that Mary and Meinrad Jagrup are not incompetent persons or infants, as directed in the Court's April 20, 2015 Order (Dkt. No. 89), the Court reviewed the record and found that the process server noted in his Affidavits of Service of the Summons and Complaint that Mary and Meinrad Jagrup "responded to service in a normal manner and did not appear to be mentally disabled or have diminished capacity to understand what was happening." (Dkt. Nos. 18-1, 20-1). The Court finds that this sworn statement is sufficient to satisfy the default judgment

requirements that Kennedy show that these individual defaulting Defendants are not incompetent persons or infants.

In addition, Kennedy has argued, and the Court has considered, the *Chamberlain* factors and finds that the prejudice to Kennedy resulting from these defaulting Defendants' breach of their contractual obligations, together with the apparent absence of a litigable defense, weighs in favor of the Court granting default judgment. *See* Dkt. No. 91 at 2-3. As Kennedy has noted, it was informed that certain Jagrup Defendants have removed large fixtures and other valuable items from "the property in question," thereby damaging Kennedy's lien and security interests, interfering with the remaining commercial tenants, and causing Kennedy prejudice. (Dkt. Nos. 88, 91, 92). In addition, the defaulting Defendants' culpable conduct is evidenced by their refusal to respond to the Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint).

Kennedy has also asserted that Oracle, Mary Jagrup and Meinrad Jagrup have "failed to appear or otherwise defend this matter." (Dkt. No. 82 at 1). The record reveals that Attorney Nizar DeWood filed a Notice of Appearance for Mary Jagrup in February 2013 (Dkt. No. 54), and filed an Answer to Elaine Canton's September 2013 Amended Cross-Claim on behalf of Mary and Meinrad Jagrup in October 2013. (Dkt. No. 74). Thus, Mary and Meinrad Jagrup have appeared in this matter. The question is whether, notwithstanding the appearance, the Court may proceed to award default judgment against these two Defendants. The Court answers that question in the affirmative.

14

Attorney DeWood's February 2013 Notice of Appearance occurred seven months *after* the Clerk of Court entered defaults against Mary and Meinrad Jagrup, and ten months *before* the filing of Kennedy's Motion for Default Judgment. Following their appearance, Mary and Meinrad Jagrup never moved to set aside the entries of default pursuant to Fed. R. Civ. P. 55(a), and thus the entries of default remain extant. Nor did they oppose Kennedy's December 2013 Motion for Default Judgment against them. *See United States v. Mulvenna*, 367 F. App'x 348, 350 (3d Cir. 2010) ("The time between the entry of default and the entry of default judgment provides the defendant with an opportunity to move pursuant to Rule 55(c), to vacate the default.").

In cases where a defendant has appeared, Fed. R. Civ. P. 55(b)(2) governs the process for converting an entry of default into a default judgment. That Rule states, in relevant part, that

> the party must apply to the court for a default judgment. . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2). The Third Circuit has noted that a defendant who has appeared in a proceeding "generally is entitled to no less than seven days' advance notice of any motion for default judgment," and that, under egregious circumstances, district courts may even enter default judgments *sua sponte*. *Sourcecorp Inc. v. Croney*, 412 F. App'x 455, 458 (3d Cir. 2011); *see also* Charles Alan Wright, Arthur R. Miller, et al., 10A Fed. Prac. & Proc. Civ. § 2686 (3d ed) (describing what occurs when an attorney enters an appearance but makes no attempt to defend on the merits: "[I]t must be remembered that an appearance, without any further attempt to defend on the merits, will not keep a party from being held in default for failure to plead or

otherwise defend; it merely activates the special notice and judicial review protections provided in [Rule 55].") (footnote omitted).

Here, while Mary and Meinrad Jagrup appeared in this action through their attorney in February 2013, they did not plead or otherwise defend against Kennedy's Complaint, attempt to set aside Kennedy's entries of default against them, or respond to Kennedy's Motion for Default Judgment. Because of their appearance, Mary and Meinrad Jagrup were entitled, under Rule 55(b)(2), to notice of the Motion for Default and Summary Judgment. Although Kennedy's Certificate of Service indicates that copies of its Motion for Default and Summary Judgment were sent only to counsel for the Cantons and the IRS (Dkt. No. 81 at 3), the CM/ECF receipt also shows that Kennedy's Motion was sent to Attorney DeWood, who therefore had actual notice of the Motion filed on the Court's docket. *See* LRCi 5.4(b)(3) (providing that registration as a filing user on CM/ECF "constitutes consent to electronic service of all documents as provided in these Rules[.]"). The Court finds that Attorney DeWood's receipt of Kennedy's Motion for Summary and Default Judgment via CM/ECF suffices for the requisite notice under Rule 55(b)(2). The Court therefore concludes that it may adjudicate Kennedy's Motion for Default Judgment against Mary and Meinrad Jagrup, notwithstanding that their attorney has entered an appearance in this case.

However, Kennedy has not shown how it calculated the amount of damages it claims is due, as was ordered in the Court's April 20, 2015 Order. (Dkt. No. 89). In her Supplemental Affidavit, Ms. Vaccarella relies on a spreadsheet to support her statement that $820,000.00 in principal is due. She avers that the Defaulting Defendants made payments of interest only and that, as of October 31, 2013, $699,519.64 in interest was due, based on the figure contained on line 83 of the spreadsheet. (Dkt. No. 91-4, ¶ 13). In addition, she avers that $1,844,102.97 in

interest was due as of May 31, 2015, but did not cite the spreadsheet or any other document to support that assertion. *Id.* ¶ 9.

The spreadsheet to which Ms. Vaccarella refers—a one-page loan history of this account—is completely illegible. (Dkt. No. 91-5). Because the type is so small and faded, it is impossible for the Court to read it to determine whether the document supports Ms. Vaccarella's conclusions about the amount of principal and interest that Kennedy asserts is owing. Nor did Ms. Vaccarella explain what the figures on the spreadsheet represent, and how they were calculated, or how the per diem rate was calculated. Consequently, the Court finds that Kennedy has not supported its claim for the amount of principal and interest it alleges is due as of May 31, 2015.

### 1. Attorney's Fees and Costs

As indicated above, Kennedy's attorney, Matthew Duensing, Esq., submitted an Affidavit of Counsel in Support of Costs and Attorney's Fees, seeking $44,290.12 in attorney's fees and $2,643.46 in costs from March 2, 2011 through September 27, 2013. (Dkt. Nos. 83-13, 83-14). Attorney's fees and costs are added to the amount of damages due when the judgment issues in this case. However, before granting the request for attorney's fees and costs, the Court will require supplemental briefing, as described below.

Under both the terms of the Note and Mortgages, Kennedy may recover "reasonable" attorney's fees. (Dkt. No. 83-1 at 5; Dkt. No. 83-2, ¶ 3.2(g); Dkt. No. 83-9, ¶ 3.2(g)). With regard to costs and expenses, under the terms of the Mortgages, Oracle agreed that "[a]ll . . . costs, expenses and fees as may be incurred by or on behalf of [Kennedy] in the protection of the Property and the maintenance of the lien of this Mortgage, including . . . expenses and costs in any litigation or proceeding affecting this Mortgage, the Note, the other Loan Documents, the

Property or the Accessories. . .  shall be immediately due and payable to [Kennedy.]" (Dkt. No. 83-2, ¶ 3.2(f); Dkt. No. 83-9, ¶ 3.2(f)).

Included in the affidavit of counsel in support of attorney's fees is a substantial amount of time billed by Sandra LaPlace and Georgina Nichols, identified as Legal Assistants. (Dkt. No. 91-7). Kennedy has not set forth the legal authority for the proposition that the fees incurred by Legal Assistants should be considered as attorney's fees, rather than as overhead or other expenses and, if so, what a reasonable hourly rate may be for Legal Assistants. *See, e.g., Mahabir v. Heirs of George*, 2014 WL 1392954, at *1 (V.I. Super. Ct. Apr. 4, 2014); *Morcher v. Nash*, 32 F. Supp. 2d 239, 241 n.1 (D.V.I. 1998).

In assessing the reasonableness of attorney's fees, the Court must also examine whether the hours billed were reasonably expended. Kennedy seeks $44,290.12 in attorney's fees as compensation for 183.40 hours of work billed in this matter between March 2, 2011 and September 27, 2013. The Court is aware that this case involves numerous loan documents, security instruments, and agreements, and mortgages on two properties. The Court also recognizes that Defendants IRS and the Cantons answered the Complaint, thereby initiating discovery, and that there were multiple Defendants and two pieces of property at issue. Still, these facts do not appear to account for the enormous disparity in attorney's fees between this and other essentially uncontested summary and default judgment debt and foreclosure cases in this District—particularly where IRS and the Cantons admitted that Kennedy holds first priority liens on the properties and did not oppose Kennedy's Motion for Summary Judgment, and where the individual Jagrup Defendants and Oracle defaulted.[10] Accordingly, because the requested

_____

[10] Attorney's fees awards in contested summary judgment foreclosure cases in this District have been significantly lower than the $44,490.12 requested by Plaintiff in this essentially uncontested summary and default judgment case. *See FirstBank v. Christopher,* No. 2013-93 (D.V.I. Feb. 26,

amount of  attorney's fees could be considered excessive, and therefore unreasonable, the need for justification is critical.

The Court will therefore deny, without prejudice, Kennedy's Motion for Default Judgment against Oracle, Mary Jagrup and Meinrad Jagrup because Kennedy has not provided sufficiently detailed evidence supporting its request for damages—in particular, the amount it claims is due in principal and interest. *Bank of Nova Scotia v. Abdallah*, 2012 WL 1139745, at *4 (D.V.I. Mar. 30, 2012) (citing *Blythe v. Marauder Corp.*, 2010 WL 3609789, at *2 (D.N.J. Sept. 16, 2010)  which denied motion for default judgment without prejudice in part because "the motion for default judgment fails to adequately detail the basis for the calculation of damages sought" and also citing *Ciasulli v. Hartmann*, 2009 WL 150668, at *1 (D.N.J. Jan. 21, 2009) in which the Court denied a motion for default judgment without prejudice because plaintiff failed to provide specific factual support and legal argument substantiating the amount of damages requested). The Court also questions the reasonableness of Kennedy's request for attorney's fees, including the adequacy of the justification therefor and whether the fees of legal assistants may be added to the amount of damages.

**B.  Default Judgment against Joseph Jagrup**

In its Motion for Default and Summary Judgment, Kennedy also sought default judgment against Joseph Jagrup. (Dkt. No. 81; Dkt. No. 82 at 4-5). The Court finds that there is a significant problem with that request because the Complaint seeks no relief against him.

---

2015) (awarding $8,033.50 in attorney's fees in hotly contested debt and foreclosure action decided on summary judgment); *Bank of Nova Scotia v. Ross,* No. 2010-118 (D.V.I. Sept. 26, 2014) (awarding $11,160.80 in long-running debt and foreclosure action decided on summary judgment and default judgment).

The Complaint mentions Joseph Jagrup twice. The first mention is in paragraph 6, where it states that, upon information and belief, Joseph Jagrup "is a resident of St. Croix, U.S. Virgin Islands, who is a member of Oracle and has personally guaranteed debt obligations of Oracle to Kennedy as set forth more fully below." (Dkt. No. 1, ¶ 6). The second mention is in paragraph 16, which provides: "Repayment of the Note, as well as repayment of all other indebtedness to Kennedy that Oracle at any time and for any reason may incur, is also secured by an unlimited personal Guaranty executed on or about September 19, 2008 by Joseph Jagrup and Meinrad Jagrup[.]" *Id.* ¶ 16.

The Complaint goes on to allege that, "[d]espite demand, Meinrad Jagrup and Mary Jagrup have failed to comply with the terms and conditions of the Guaranty and are in default under that instrument," and that Kennedy "is entitled to be reimbursed from Oracle, Meinrad Jagrup and Mary Jagrup" for any charges that may accrue prior to the foreclosure sale, as a result of the terms of the Note, Mortgages, Guaranty, and Loan. (Dkt. No. 1, ¶¶ 27, 29). In the Complaint's "Wherefore Clause," Kennedy: (1) requests judgment against "Oracle, Meinrad Jagrup and Mary Jagrup, jointly and severally, for all unpaid principal, interest, and charges due and payable on the Note and Loan"; (2) seeks to enforce and foreclose its first priority liens on the mortgaged properties and have them sold "in satisfaction of the total indebtedness of Oracle, Meinrad Jagrup and Mary Jagrup to Kennedy"; and (3) asks the Court to order "a personal judgment against Oracle, Meinrad Jagrup and Mary Jagrup, jointly and severally, for any deficiencies remaining if this judgment is not satisfied after such [foreclosure] sales." *Id.* at 6, 7.

Thus, while the Complaint mentions Joseph Jagrup, it does not seek to hold him accountable for any default, any repayment of the loan through liability on the Guaranty, or any

deficiency that may arise after the foreclosure sale. In other words, the Complaint did not provide Joseph Jagrup with proper notice that he may be held liable in this action.

This pleading deficiency cannot be cured by naming Joseph Jagrup in the Motion for Default Judgment and seeking default judgment against him, along with the other defaulting Defendants, simply because he did not appear. *See Siemieniewicz v. CAZ Contracting Corp.*, 2012 WL 5183375, at *4 (E.D.N.Y. Sept. 21, 2012) ("The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading."); *cf. Claybrook v. Nour Mgmt. Co. (In re: Discovery Zone, Inc.)*, 2003 WL 21554527, at *1 (Bankr. D. Del. July 9, 2003) (rejecting plaintiff's position that furnishing "sufficient factual information" to defendant outside complaint cures defects in the complaint and denying motion for default judgment).

Further, Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).[11] Here, Kennedy's Motion for Default Judgment against Joseph Jagrup contravenes this

---

[11]     Wright and Miller explain:

> The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civ. § 2663 (3d. ed. 2011).

established principle by seeking default judgment against him under the Guaranty, while the Complaint did not request such relief Civ..

Accordingly, the Court will deny Kennedy's request for a default judgment against Joseph Jagrup.

## C. Conclusion Regarding Default Judgment

At this juncture, because of the problems with the damages prong of the default judgment test, the Court will deny Kennedy's Motion for Default Judgment against Oracle, Mary Jagrup, and Meinrad Jagrup. Because of the pleading deficiency in the Complaint, the Court will also deny Kennedy's Motion for Default Judgment against Joseph Jagrup.

Kennedy shall have up to and including March 4, 2016 to submit supplemental filings addressing the deficiencies in its submissions as identified in this Memorandum Opinion.

## D. Summary Judgment

The record in this case shows that Defendants Elaine S. Canton and Eric A. Canton executed a Subordination Agreement on September 19, 2008, in which they expressly agreed that their $950,000.00 loan to Oracle was subordinated to Oracle's $820,000.00 Mortgage and Security Agreement to Kennedy. (Dkt. No. 83-10). The Subordination Agreement provides that the payment of all "Subordinated Liabilities"—*i.e.*, Oracle's debt to the Cantons—"shall be postponed and subordinated to the payment in full of all Senior Liabilities"—*i.e.*, Oracle's debt to Kennedy. *Id.* at 3. In addition, the Cantons' "Second Priority Mortgage" on the Hope Mortgaged Property states that it is "a second priority mortgage, second only to the mortgage from Mortgagor [Meinrad and Mary Jagrup] to Kennedy Funding Inc." (Dkt. No. 79-3 at 2, ¶ 4). Thus, it is undisputed that Kennedy's lien on the Hope Mortgaged Property is superior to that of

the Cantons, and the Court will grant Kennedy's Motion for Summary Judgment against Elaine S. Canton and Eric A. Canton on the priority of liens.

With regard to the IRS' lien, the Complaint alleges that the IRS "has a recorded lien for unpaid taxes against the [Castle Coakley] property." (Dkt. No. 1, ¶ 11). The IRS' Answer to the Complaint provides that it has a federal tax lien against that property for unpaid employment taxes in the amount of $5,865.15. (Dkt. No. 22, ¶ 7). Also in its Answer, the IRS asserts that, "[t]o the extent that there is a public sale of the [Coakley Mortgaged Property] in which the amount of the sale is over and above the amounts owed to [Kennedy], the United States is entitled to share in the proceeds of such sale as a junior lienholder before any other defendants." (Dkt. No. 22, ¶ 8). Thus, the IRS has acknowledged that its lien is junior to Kennedy's lien. The Court will therefore grant Kennedy's Motion for Summary Judgment against the IRS on the priority of Kennedy's lien on the Castle Coakley Mortgaged Property.

## IV.   CONCLUSION

While Kennedy has satisfied most of the requirements necessary for entry of a default judgment against Oracle, Mary Jagrup, and Meinrad Jagrup, it failed to offer sufficient proof supporting its request for damages—in particular, regarding the amount of principal and interest due, and the amount of attorney's fees. The Court will therefore deny Kennedy's Motion for Default Judgment against Oracle, Mary Jagrup, and Meinrad Jagrup.

The Court will also deny Kennedy's Motion for Default Judgment against Joseph Jagrup based on pleading deficiencies in the Complaint.

Kennedy shall have up to and including **March 4, 2016** to submit supplemental filings addressing the deficiencies in its submissions as identified in this Memorandum Opinion.

The Court will grant Kennedy's Motion for Summary Judgment against Defendants Elaine S. Canton, Eric A. Canton, and the IRS. The Court finds that Kennedy holds a first priority lien on the Coakley and Hope Mortgaged Properties; the Cantons have a second priority lien on the Hope Mortgaged Property; and the IRS has a second priority lien on the Coakley Mortgaged Property.

Finally, the Court will deny Kennedy's Emergency Request for a Ruling (Dkt. No. 92) as moot.

An appropriate Order accompanies this Memorandum Opinion.

Date: February 4, 2016                    _____/s/_____
                                          WILMA A. LEWIS
                                          Chief Judge

24