DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| KENNEDY FUNDING, INC., AS AGENT FOR CERTAIN CO-LENDERS,<br><br>    Plaintiff,<br>v.<br><br>ORACLE BUSINESS DEVELOPMENTS, LLC, A VIRGIN ISLANDS LIMITED LIABILITY COMPANY, JOSEPH JAGRUP, MEINRAD JAGRUP, MARY JAGRUP, THE INTERNAL REVENUE SERVICE OF THE UNITED STATES OF AMERICA, ERIC A. CANTON AND ELAINE S. CANTON,<br><br>    Defendants, | Civil Action No. 2012-0009 |

**Attorneys:**
**Matthew J. Duensing, Esq.,**
St. Thomas, U.S.V.I.
    *For Plaintiff*

**Nizar A. Dewood, Esq.,**
St. Croix, U.S.V.I.
    *For Defendants Meinrad Jagrup and Mary Jagrup*

**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Internal Revenue Service*

**Edward H. Jacobs, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant/Cross-Claimant/Third-Party Plaintiff Elaine S. Canton*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

    THIS MATTER comes before the Court on the "Motion for Default and Summary Judgment" filed by Plaintiff Kennedy Funding, Inc., as Agent for Certain Co-Lenders

("Kennedy"). (Dkt. No. 81). The Motion seeks default judgment for debt and foreclosure against Defendants Oracle Business Developments, LLC, a Virgin Islands Limited Liability Company ("Oracle"), Joseph Jagrup, Meinrad Jagrup, and Mary Jagrup, and summary judgment determining the priority of liens as to Defendants the Internal Revenue Service of the United States of America ("IRS"), and Eric A. Canton[1] and Elaine S. Canton (the "Cantons"). (*Id.*)[2] For the reasons that follow, the Court will grant in part and deny in part the Motion for Default Judgment.

## I. PROCEDURAL HISTORY

On February 4, 2016, the Court issued a Memorandum Opinion and Order (Dkt. Nos. 93, 94) which denied without prejudice Kennedy's Motion for Default Judgment against Joseph Jagrup. (Dkt. No. 94 at 91-22).[3] The Memorandum Opinion and Order also denied without

---

[1] In July 2013, Eric Canton and Elaine Canton moved to amend their Answer, Cross-Claim, and Third-Party Complaint for the purpose of removing Eric Canton "as a party to the lawsuit since Elaine S. Canton alone has the status that Eric A. Canton and Elaine S. Canton used to hold together"—*i.e.*, as junior lienholders in the Hope Mortgaged Property. (Dkt. No. 66). The Magistrate Judge of this Court granted the Motion in August 2013, permitting the amended documents to be filed. (Dkt. No. 67). Although the Cantons' Motion to Amend was granted, in which they requested that Eric Canton's name be removed from the lawsuit, the parties never filed a document pursuant to Fed. R. Civ. P. 41 formally removing him from this case. In any event, based on the representations in the Motion to Amend filed by Eric Canton and Elaine Canton, Eric Canton no longer has an interest in the Hope Mortgaged Property. In this Memorandum and Opinion and the accompanying Judgment and Order, the Court will accept the Cantons' representations that only Elaine Canton has an interest in the Hope Mortgaged Property.

[2] The Court previously granted the Motion for Summary Judgment. (Dkt. Nos. 93, 94).

[3] The Memorandum Opinion provided as follows:

> Thus, while the Complaint mentions Joseph Jagrup, it does not seek to hold him accountable for any default, any repayment of the loan through liability on the Guaranty, or any deficiency that may arise after the foreclosure sale. In other words, the Complaint did not provide Joseph Jagrup with proper notice that he may be held liable in this action.
>
> This pleading deficiency cannot be cured by naming Joseph Jagrup in the Motion for Default Judgment and seeking default judgment against him, along with the other defaulting Defendants, simply because he did not appear. *See Siemieniewicz v. CAZ*

2

prejudice the Motion for Default Judgment against Defendants Oracle, Meinrad Jagrup, and Mary Jagrup to the extent that "Kennedy did not support its Motion with sufficient evidence substantiating the amount of damages it asserts it is due—including attorney's fees and costs." (Dkt. No. 93).[4] The Court permitted Kennedy to submit supplemental filings to address the deficiencies identified in the Memorandum Opinion. (*Id.*)

---

> *Contracting Corp.,* 2012 WL 5183375, at *4 (E.D.N.Y. Sept. 21, 2012) ("The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading."); *cf. Claybrook v. Nour Mgmt. Co. (In re: Discovery Zone, Inc.)*, 2003 WL 21554527, at *1 (Bankr. D. Del. July 9, 2003) (rejecting plaintiff's position that furnishing "sufficient factual information" to defendant outside complaint cures defects in the complaint and denying motion for default judgment).
>
> Further, Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Here, Kennedy's Motion for Default Judgment against Joseph Jagrup contravenes this established principle by seeking default judgment against him under the Guaranty, while the Complaint did not request such relief.

(Dkt. No. 94 at 20-22) (footnote omitted).

[4] The Memorandum Opinion provided as follows:

> However, Kennedy has not shown how it calculated the amount of damages it claims is due, as was ordered in the Court's April 20, 2015 Order. (Dkt. No. 89). In her Supplemental Affidavit, Ms. Vaccarella relies on a spreadsheet to support her statement that $820,000.00 in principal is due. She avers that the Defaulting Defendants made payments of interest only and that, as of October 31, 2013, $699,519.64 in interest was due, based on the figure contained on line 83 of the spreadsheet. (Dkt. No. 91-4, ¶ 13). In addition, she avers that $1,844,102.97 in interest was due as of May 31, 2015, but did not cite the spreadsheet or any other document to support that assertion. *Id.* ¶ 9.
>
> The spreadsheet to which Ms. Vaccarella refers—a one-page loan history of this account—is completely illegible. (Dkt. No. 91-5). Because the type is so small and faded, it is impossible for the Court to read it to determine whether the document supports Ms. Vaccarella's conclusions about the amount of principal and interest that Kennedy asserts is owing. Nor did Ms. Vaccarella explain what the figures on the spreadsheet represent, and how they were calculated, or how the per diem rate was

In its Notice of Filing in response to the Memorandum Opinion and Order, Kennedy did not address the issue of Joseph Jagrup's liability, but did address the question of damages. It provided an Updated Affidavit of Kim Vacarella, a Kennedy employee who explained how Kennedy had arrived at the damages figures it claims are due. (Dkt. No. 95-1). Ms. Vacarella attached a loan spreadsheet to her Affidavit which supported and updated the damages figures Kennedy previously sought.

In her Updated Affidavit, Ms. Vaccarella averred that she was personally familiar with Kennedy's records concerning the September 19, 2008 Note executed in favor of Kennedy by Oracle through Defendant Meinrad Jagrup, and the First Priority Mortgage dated the same day given to Kennedy from Oracle covering property at Plot No. 73 Estate Castle Coakley (the "Coakley Mortgage"). (Dkt. No. 95-1). In addition, Ms. Vaccarella stated she was also personally familiar with a September 19, 2008 First Priority Mortgage given to Kennedy from Meinrad Jagrup and Mary Jagrup covering Plot No. 34, Estate Hope (the "Hope Mortgage"), which also secured repayment of the Note. (*Id.*)

Ms. Vaccarella asserted that, as of February 1, 2016, Defendants were indebted to Kennedy in the total amount of $1,980,895.00, comprised of $820,000.00 in principal and $1,160,895.00 in interest, with interest continuing to accrue at the rate of $569.44 per diem, as shown on the attached spreadsheet. (*Id.*) She explained that the total amount due was calculated based on the interest rates

---

calculated. Consequently, the Court finds that Kennedy has not supported its claim for the amount of principal and interest it alleges is due as of May 31, 2015.

(Dkt. No. 94 at 16-17).

provided in the Note, and application of prepaid interest in the amount of $101,680.00.[5] (*Id.*) Ms. Vaccarella went on to say that, on March 1, 2010, Defendants defaulted on their payments, after which the default interest rate of twenty-five percent was implemented, which—calculated on a 360-day year—yielded the $569.44 per diem rate ($820,000.00 at 25%/12 months = $17,083.33/30 days = $569.44). (*Id.*) She asserted that the two-page loan history spreadsheet attached to her Updated Affidavit "provides a complete breakdown of the principal, interest rate, interest, late fee/interest adjustment, interest payments and date of payments as of February 1, 2016," which did not include legal fees and costs. (*Id.*)

In its Notice of Filing, Kennedy also provided an Updated Memorandum of Costs which included an Updated Attorney's Affidavit from its counsel, Attorney Matthew Duensing. The Affidavit identified the attorneys who worked on this matter and their hourly fees, and includes a billing summary that contains the initials of the attorney who worked on a line item, the date the work was performed, a short description of the work, the hourly rate and time spent on the task, and amount billed. (Dkt. Nos. 95-3, 95-4, 95-5).

The Court will address the outstanding issues of Joseph Jagrup's liability, as well as damages and attorney's fees sought by Kennedy in relation to its Motion for Default Judgment.

## II. DISCUSSION

### A. Joseph Jagrup's Liability

In its Motion for Default and Summary Judgment, Kennedy sought default judgment against Joseph Jagrup. (Dkt. No. 81, 82). In its February 4, 2016 Memorandum Opinion and Order adjudicating that Motion, the Court ruled that the Complaint, as written, did not seek to hold Joseph

---

[5] The interest rate from September 19, 2008 through September 18, 2009 was twelve percent, and the interest rate increased to fifteen percent from September 19, 2009 through February 28, 2010, after which the prepaid interest was exhausted. (Dkt. No. 95-1).

5

Jagrup "accountable for any default, any repayment of the loan through liability on the Guaranty, or any deficiency that may arise after the foreclosure sale." (Dkt. No. 94 at 20-21). Accordingly, the Court denied Kennedy's request for default judgment against Joseph Jagrup without prejudice (*id.* at 22), and permitted Kennedy to submit a supplemental filing to address this deficiency. (Dkt. No. 93 at 2). However, in its subsequent Notice of Filing, Kennedy did not address this matter.

In view of the foregoing, the Court finds—as it did in its February 4, 2016 Opinion—that the Complaint, as written, does not seek the relief against Joseph Jagrup that Kennedy seeks in its Motion for Default Judgment, and thus default judgment against Joseph Jagrup cannot be granted. (Dkt. No. 94 at 20-22). Because Kennedy has failed to correct this deficiency, the Court will now deny with prejudice Kennedy's Motion for Default Judgment against Joseph Jagrup.

### B. Damages

#### 1. Loan Indebtedness

The September 19, 2008 Note sets forth the amount of principal borrowed ($820,000.00) plus the changing interest rates over the course of the loan. (Dkt. No. 83-1 at 1, 2). Kennedy provided the aforementioned Updated Affidavit of Kim Vacarella, supported by a two-page loan history spreadsheet, which shows how the amounts due on the account were calculated from the inception of the loan (September 19, 2008) through the filing of the Updated Affidavit (February 1, 2016). (Dkt. No. 95-1, 95-2). The printout supports Kennedy's position that the amount due as of February 1, 2016 consists of $820,000.00 in principal plus $1,160,895.00 in interest up to and including February 1, 2016, for a total amount due of $1,980,895.00. Ms. Vacarella also showed how the per diem interest rate of $569.44 was calculated, which was assessed following the March 1, 2010 default. (Dkt. No. 95-1).

The $569.44 per diem interest continues to accrue from February 2, 2016 up to and including the date of entry of this Judgment, April 28, 2017, for an additional amount of $257,386.88. Thus, the total amount of principal and interest due up to and including the date of Judgment is $2,238,281.88. Following entry of Judgment, interest will be assessed at the federal statutory rate set forth in 28 U.S.C. § 1961(a) until the Judgment is paid.

### 2. Attorney's Fees

In the February 4, 2016 Memorandum Opinion, the Court opined that the $44,290.12 in attorney's fees and $2,643.46 in costs from March 2, 2011 through September 27, 2013 sought by Kennedy's counsel "could be considered excessive, and therefore unreasonable." (Dkt. No. 94 at 18-19). The Court questioned the adequacy of the justification for those amounts; questioned whether the fees of legal assistants could be compensated; declined to award attorney's fees and costs; and permitted Kennedy to file supplemental documents to address these points. (*Id.* at 19).

Matthew J. Duensing, Esq., a partner at Duensing & Casner and one of the attorneys responsible for representing Kennedy in this matter, provided an updated Affidavit and billing records supporting Kennedy's revised request for attorney's fees and costs. (Dkt. No. 95-4). He averred that the resubmitted billing records did not include paralegal fees, which had been included in his initial request. (*Id.* at 1, n.1). Attorney Duensing sought revised attorney's fees in the amount of $29,197.12 and costs of $2,643.46, for a total of $31,840.58, from March 4, 2011 through September 27, 2013. (Dkt. No. 95-5).

With regard to both attorney's fees and costs, under the terms of the Note, Defendants agreed to indemnify Kennedy against "any and all claims, loss, cost, damage or expense (including, without limitation, reasonable attorneys' fees) which may be incurred by [Kennedy] in connection with or as a result of any default[.]" (Dkt. No. 83-1 at 5). Under the terms of the

Mortgages, additional indebtedness due Kennedy included "[a]ll costs and such other costs, expenses and fees as may be incurred by Mortgagee in the protection of the property. . . including attorneys' fees, expenses and costs in any litigation or proceeding affecting this Mortgage, the Note, the other Loan Documents[.]" (Dkt. No. 83-2 at 23-24; Dkt. No. 83-9 at 27). Because the Mortgages provide that Kennedy may pursue any remedies available to it under the law and decisions of the state where the land is located, (Dkt. No. 83-2 at 22; Dkt. No. 83-9 at 25), the Court will look to Virgin Islands law for guidance in assessing what attorney's fees may be "reasonable." *Flagstar Bank, FSB v. Stridiron*, 2013 WL 5941298, at *6 (D.V.I. Oct. 31, 2013).

"To determine a fair and reasonable award of attorneys' fees [under 5 V.I.C. § 541(b)], the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases). The Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees. First, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison to prevailing market rates in the relevant community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *Berne Corp.*, 2012 WL 369535 at *10.

Assessing the second step first—whether the hourly rate sought is reasonable—Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans

from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases). In his Updated Affidavit, Attorney Duensing asserted that his billing rate was $300.00 per hour; and Associate Attorneys Christopher Brookhart and Tracy Myers' billing rates were both $225.00 per hour. (Dkt. No. 95-4). While Attorney Duensing averred that his hourly rate was $300.00 per hour, the billing records reflect that he charged $350.00 per hour beginning on January 4, 2013 and continuing through September 27, 2013. Attorney Duensing provided no support for the reasonableness of this $350.00 hourly rate, which exceeds the rates found reasonable in *Anthony on Behalf of Lewis*. While the Court finds his $300.00 per hour rate reasonable, it finds his $350.00 per hour rate unsupported and thus unreasonable. Having charged 30.3 hours at $350.00 per hour, the Court will reduce the amount of attorney's fees by $1,515.00 to reflect what the fees for 30.3 hours would be at the allowable billing rate of $300.00 per hour. The Court also notes that there is a $150.00 charge for "AJC" in the billing records on January 26, 2012. "AJC" is not identified, and therefore this cost will be disallowed.

As touched upon above, in its February 4, 2016 Memorandum Opinion, the Court was troubled by what appeared to be an excessive amount of attorney's fees—$44,290.12—for 183.40 hours of work billed in this case. (Dkt. No. 94 at 18). The Court observed that the case involved numerous loan documents and mortgages on two properties, and that two Defendants, IRS and the Cantons, answered the Complaint, thereby initiating discovery—factors which could serve to raise the amount of attorney's fees from those awarded in run-of-the-mill debt and foreclosure cases. However, the Court opined that those facts did not appear to account for the

> enormous disparity in attorney's fees between this and other essentially uncontested summary and default judgment debt and foreclosure cases in this District—particularly where IRS and the Cantons admitted that Kennedy holds first priority liens on the

properties and did not oppose Kennedy's Motion for Summary Judgment, and where the individual Jagrup Defendants and Oracle defaulted.

(*Id.*)

In Attorney Duensing's updated billing records, he removed entries for the paralegal work on the case, which lowered the attorney's fees requested from $44,290.12 to $29,197.12. Nevertheless, that amount remains well beyond attorney's fees awarded even in contested summary judgment foreclosure cases in this District. *See, e.g.*, *Bank of Nova Scotia v. Ross,* No. 2010-118 (D.V.I. Sept. 26, 2014) (awarding $11,160.80 in long-running debt and foreclosure action decided on summary judgment and default judgment); *Cf. FirstBank v. Christopher*, No. 2013-93 (D.V.I. Feb. 26, 2015 and December 4, 2015) (awarding a total of $24,910.25 in attorney's fees in hotly contested, atypical debt and foreclosure action decided on summary judgment, where *pro se* defendants filed over fifty motions, notices, and other documents within two years, requiring the bank to file approximately twenty oppositions or responses to those filings). The Court also notes that the revised billing records still show that Kennedy is billing for 183.40 hours of work, even with the excision of the paralegal entries. Since Kennedy did not update the number of hours billed to reflect the work performed only by the attorneys, the Court was not provided with an updated amount of time expended in this case for which the attorneys seek reimbursement.

Generally speaking, the Court finds that the billing summary reveals that the time billed for tasks is excessive and therefore unreasonable. Two illustrations serve as examples of this problem which permeates the billing summary.

Kennedy's Memorandum of Law in support of its Motion for Summary and Default Judgment was five and one-half pages long (Dkt. No. 82), its Statement of Undisputed Facts was four and one-half pages (Dkt. No. 83), and the Affidavit of Proof was two pages in length (Dkt.

No. 86-1). Despite these generally short, routine filings, the billing summary indicates that attorneys billed approximately 31.4 hours, totaling $8,871.12—spanning from April 2012 to September 2013—on the Motion for Default and Summary Judgment, and other tasks bundled into those entries.[6] This is an excessive amount of time to bill for an uncomplicated motion in a relatively simple case.

The billing records also contain numerous entries related to work on a bankruptcy court case spanning from October 12, 2012 to April 26, 2013. (Dkt. No. 95-5 at 5-8). The tasks involve working on a proof of claim, completing property appraisals, attending creditors meetings, and reviewing Trustee's proposals for abandonment of property. It appears that the bankruptcy-related work was necessitated because Oracle, a Defendant in this case, declared bankruptcy. However, the only bankruptcy-related item filed in this case was a one-page cover sheet to which was attached a "Notice of Proposed Abandonment" where the bankruptcy trustee in the Oracle Chapter

---

[6] Many of the entries in the billing records were bundled—*i.e.*, containing multiple tasks where the time for each individual task was not indicated. For example, the July 18, 2013 entry for 0.6 hour provided: "Work on obtaining insurance coverage on mortgaged premises; prepare exhibits to support motion for default and summary judgment." (Dkt. No. 95-5 at 10). It is not possible to determine how much time was spent on obtaining the insurance coverage and how much time was spent on preparing the exhibits for the Motion for Default and Summary Judgment. Since the Court could not separate the time spent on the Motion from other tasks in the bundled entries throughout the billing record, the Court considered the entire entry as time spent on the Motion. Thus, the Court's 31.4 hour calculation of time spent on the Motion is an estimate, not an exact amount. *See Bank of Nova Scotia v. Ross,* 2014 WL 4801086, at *7 (D.V.I. Sept. 26, 2014) ("A significant shortcoming in the Memorandum of Costs submitted by the Bank's counsel is that the amount of time that counsel spent on a discrete task cannot be determined because multiple tasks are often lumped together in one entry. As a result, the Court cannot evaluate precisely the time expended on a particular task—and the attorney's fees requested—for reasonableness"); *Bank of Nova Scotia v. Abdallah*, 2013 WL 1846544, at *6-*7 (D.V.I. May 2, 2013) (by bundling different tasks in one entry, Bank's counsel failed to meet his burden of showing that attorney's fees sought were reasonable); *Charlery v. STX Rx, Inc.*, 2011 WL 4025438, at *5 (D.V.I. Sept. 8, 2011) ("If a block entry [containing numerous tasks] is confusing or makes it difficult to allocate reasonable time to a specific task, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion.") (internal quotation marks omitted)).

7 case indicated that certain undescribed property of the estate would be abandoned. (Dkt. Nos. 57, 57-1). The amount billed in this case for bankruptcy matters totals $10,137.50 for 35.4 hours of work. This amount appears excessive, particularly where a minuscule amount of bankruptcy-related work appeared on the docket in this case.[7]

The Court concludes that the attorneys spent an excessive amount of time litigating this case, and that the $29,197.12 in attorney's fees requested is still unreasonable. The Court will therefore reduce the attorney's fees award in two steps. First, it will disallow the $1,515.00 in attorney's fees representing the difference between Attorney Duensing's hourly fee of $350.00 starting in January 2013. The Court will also disallow the $150.00 charge for "AJC's" billing entry, resulting in fees of $27,532.12. Second, the Court will reduce the $27,532.12 amount by fifty percent, representing an appropriate reduction for the excessive fees requested, resulting in a total attorney's fees award of $13,766.06 for work performed between March 2, 2011 through September 27, 2013. *See Lucerne Inv. Co. v. Estate Belvedere, Inc.*, 411 F.2d 1205 (3d Cir. 1969) (allowing 7.5% of requested attorney's fees in mortgage foreclosure case); *Caribbean Island Adventure*, 2008 WL 783537, at *2 (allowing 6%, or $1,034.26 of $16,861.16 in requested attorney's fees and costs in debt and foreclosure case); *Ruyter Bay Land Partners,* 2008 WL 413308, at *2 (allowing 21%, or $2,000, of the $9,511 in requested attorney's fees and costs).

---

[7] By way of contrast, in *Arrow Pocono Lines, Inc. v. Lowell Land, LLC*, 2016 WL 2637819, at *6 (D.V.I. May 6, 2016), a debt and foreclosure case in this Court, local counsel was required to hire bankruptcy counsel to, *inter alia*, perform legal work associated with a bankruptcy case involving an individual who served as the principal of the defendant's business. The attorney filed an objection to confirmation of the principal's plan; attended a confirmation hearing; and filed a motion for relief from stay concerning the property in order that the foreclosure could proceed. The Court found the hourly rates of $295.00 and $300.00 for the two attorneys to be reasonable, found the hours expended on the various tasks to be reasonable, and awarded $2,399.50 in attorney's fees.

### 3. Expenses

Kennedy seeks $2,643.46 for the following expenses: filing fees (UCC, complaint, lis pendens, recording the praecipe); publishing, service of process, title search, and document delivery fees; express mail and regular postage charges; on-line legal research charges; travel costs (St. Thomas to St. Croix) to attend court meetings and creditors meetings; photocopy costs, long distance telephone calls, and messenger service.

Title 5, V.I.C. Section 541(a) defines what costs are "allowed in a civil action."[8] "Expenses" are not defined by statute, nor are they defined in the Mortgages or other loan documents. The Supreme Court of the Virgin Islands has opined that costs and expenses do not cover the same outlays of funds in a case. In *Terrell v. Coral World,* 55 V.I. 580, 2011 WL 3492575 (V.I. July 20, 2011), the court noted that Title 5, Sections 541 through 547, "govern the award of costs to a prevailing party in civil litigation." *Id*. at *2. The Court in *Terrell* observed: "It is well-established that when a statute authorizes taxation of costs [referring to 5 V.I.C. § 541(a)], 'costs are not synonymous with expenses unless expressly made so by statute.'" *Id.* at 591 n.14 (quoting *Benda v. Fana*, 227 N.E.2d 197, 201 (Ohio 1967)). The Supreme Court further explained that "limiting 'costs' to what is specifically provided for in a fee-shifting statute is necessary in order to avoid 'absurd situations' that the legislature could not have intended, such as placing a litigant 'with the burden of paying exorbitant professional witness fees which may very well exceed the amount of the verdict itself.'" *Id.* (quoting *Benda*, 227 N.E.2d at 201). Further, in order for costs

---

[8] The costs allowed are: "(1) Fees of officers, witnesses, and jurors; (2) Necessary expenses of taking depositions which were reasonably necessary in the action; (3) Expenses of publication of the summons or notices, and the postage when they are served by mail; (4) Compensation of a master as provided in Rule 53 of the Federal Rules of Civil Procedure; (5) Necessary expenses of copying any public record, book, or document used as evidence on the trial; and (6) Attorney's fees as provided in subsection (b) of this section." 5 V.I.C. § 541(a).

to be reimbursed, they must be reasonable. *See Creative Minds, LLC v. Reef Broadcasting, Inc.*, 2014 WL 4908588, at *1 (V.I. Super. Sept. 24, 2014) (opining that prevailing party in civil action may "recover reasonable costs and attorney's fees" under statute); *Galt Capital, LLP v. Seykota*, 2007 WL 4800135, at *3 (D.V.I. Dec. 20, 2007) (opining that Virgin Islands statute permits reimbursement for reasonable fees and costs).

With regard to the reimbursement of expenses, such reimbursement is permitted not by statute but by contract, the terms of which are regularly enforced by courts. *See Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 271 (3d Cir. 2004) ("[C]ourts are obligated to enforce contracts as they are made by the parties and not to create additional terms out of thin air."); *Rainey v. Hermon*, 2011 WL 4738534, at *6 (V.I. Oct. 6, 2011) (enforcing the terms of a contract, even for legal fees and administrative costs, "unless the fee is unreasonable."). Pursuant to Rule 211.1.5 of the Virgin Islands Rules of Professional Conduct, adopted by the Supreme Court of the Virgin Islands and effective February 1, 2011, fees and expenses awarded in the Virgin Islands must be "reasonable."

None of the items for which Kennedy seeks reimbursement fall under the statute's definition of "costs." Rather, they are more properly described as expenses under the loan documents, and the Court will analyze them in that context. As noted above, in order to be reimbursed, both costs and expenses in the Virgin Islands must be reasonable.

The Court finds the various filing fees (UCC, complaint, lis pendens, and recording the praecipe), the publishing fee, service of process fees, title search expenses and express mail charges, are expenses reasonably incurred in this debt and foreclosure matter, and will be reimbursed. In addition, the Court finds that travel costs were also reasonably incurred and will be reimbursed. *See, e.g.*, *Equivest St. Thomas, Inc. v. Gov't of Virgin Islands*, 46 V.I. 447, 2004 WL

3037953 at *9–*10 (D.V.I. Dec. 31, 2004) (finding filing fees, process service fees, transcript purchase fees, witness fees, and travel expenses to be "reasonable expenses which are normally charged paying clients."). The Court will thus award $2,371.36 in expenses.

On the other hand, the Court will disallow the following charges: regular postage, photocopy costs, and long distance telephone calls. It is well-established that "overhead costs," such as regular postage, photocopies, and telephone calls, are not compensable under § 541 as costs. *Creative Minds, LLC v. Reef Broadcasting, Inc.,* 2014 WL 4908588, at *1 (V.I. Super. Sept. 24, 2014). By analogy, the Court considers these "overhead costs" as non-compensable expenses as well. The billing summary also shows a $30.00 charge for "2 status reports for St. Croix properties." This is an insufficient description of the service provided and will be disallowed. Messenger service (hand delivery to Lt. Governor's office) is considered an overhead cost and will be disallowed. *Galt Capital, LLP v. Seykota*, 2007 WL 4800135, at *2 (D.V.I. Dec. 20, 2007).

With regard to on-line legal research, the Court is unaware of any case law in the Virgin Islands regarding the reasonableness of on-line legal research as an expense. Such case law does exist concerning the propriety of reimbursement of this kind of expenditure in the context of costs. Courts have disallowed costs for computerized legal research as they are considered part of overhead expenses. *Morcher v. Nash*, 32 F. Supp. 2d 239, 263 (D.V.I. 1998) (explaining that "computerized legal research differs from traditional research only in the mode of retrieval, and attorneys routinely purchase research materials as part of overhead") (citing cases); *Mahabir v. Heirs of George*, 2014 WL 1392954, at *2 (V.I. Super. Apr. 4, 2014) (disallowing computer legal research charges under § 541(a) as general overhead expenses). The Court finds that allowing on-line legal research—an overhead charge—as an expense would be unreasonable and therefore will not award them.

Accordingly, the Court will permit reimbursement of $13,766.06 in attorney's fees and $2,371.36 in expenses, for a total amount of $16,137.42 to be added to the total indebtedness.

### III. CONCLUSION

Based on the foregoing, the Court will grant Kennedy's Motion for Default and Summary Judgment in part and will deny it in part.

The Court will grant in part Kennedy's Motion for Default Judgment, and will enter default judgment against Defendants Oracle, Mary Jagrup, and Meinrad Jagrup. The Court will deny with prejudice Kennedy's Motion for Default Judgment against Joseph Jagrup.

The Court will award a total of $1,980,895.00 in damages (principal and interest) up to and including February 1, 2016, and will award $569.44 in per diem interest of $259,095.20 from February 2, 2016 through the date of the Judgment and Order (May 1, 2017), totaling $2,239,990.20, with interest accruing thereafter at the federal statutory rate pursuant to 28 U.S.C. § 1961(a) until the Judgment is paid. The Court will grant in part and deny in part Kennedy's Motion for Default Judgment regarding the award of attorney's fees and expenses. The Court will award $13,766.06 in attorney's fees and $2,371.36 in expenses through September 27, 2013.

The Court previously granted Kennedy's Motion for Summary Judgment against Defendants Elaine S. Canton, Eric A. Canton, and the IRS. Based on that ruling, Kennedy holds a first priority lien on the Coakley and Hope Mortgaged Properties; Elaine Canton has a second priority lien on the Hope Mortgaged Property;[9] and the IRS has a second priority lien on the Coakley Mortgaged Property. (Dkt. No. 93; Dkt. No. 94 at 22-23).

---

[9] *See* n.1, *supra*.

An appropriate Order, which incorporates the findings herein, as well as the Court's earlier ruling on Kennedy's Motion for Summary Judgment (Dkt. Nos. 93, 94), accompanies this Memorandum Opinion.

Date: May 1, 2017

        /s/        
WILMA A. LEWIS
Chief Judge