**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| KENNEDY FUNDING, INC., AS AGENT ) <br> FOR CERTAIN CO-LENDERS, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> ORACLE BUSINESS DEVELOPMENTS, LLC, ) <br> A VIRGIN ISLANDS LIMITED LIABILITY ) <br> COMPANY; JOSEPH JAGRUP; MEINRAD ) <br> JAGRUP; MARY JAGRUP; THE INTERNAL ) <br> REVENUE SERVICE OF THE UNITED STATES ) <br> OF AMERICA; ERIC A. CANTON and ) <br> ELAINE S. CANTON, ) <br> ) <br> Defendants, ) <br> ) | Civil Action No. 2012-0009 |

**Attorneys:**
**Matthew J. Duensing, Esq.,**
St. Thomas, U.S.V.I.
   *For Plaintiff*

**Nizar A. Dewood, Esq.,**
Houston, TX
   *For Defendants Meinrad Jagrup and Mary Jagrup*

**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
   *For Defendant Internal Revenue Service*

**Edward H. Jacobs, Esq.,**
St. Croix, U.S.V.I.
   *For Defendant/Cross-Claimant/Third-Party*
   *Plaintiffs Elaine S. Canton and Eric A. Canton*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

   THIS MATTER comes before the Court on the "Motion to Vacate Sale & Order Confirming Sale of 73 Estate Castle Coakley" (Dkt. No. 126) filed by Defendants Meinrad Jagrup

and Mary Jagrup ("Jagrups"). The Motion seeks to void both the Marshal's Sale held on December 18, 2017 and this Court's Order dated February 15, 2018 confirming the sale of real estate owned by Oracle Business Developments, LLC. ("Oracle") (Dkt. Nos. 124-7; 125). The property was sold to pay a judgment obtained against Oracle by Kennedy Funding, Inc., as Agent for Certain Co-Lenders ("Kennedy"). (Dkt. No. 101).

The Jagrups—individual members of Oracle and guarantors of Oracle's debts—filed bankruptcy under Chapter 13 of the Bankruptcy Code on October 3, 2017.[1] In their Motion to Vacate, the Jagrups claim that the sale of the real estate owned by Oracle violated the automatic bankruptcy stay that protects co-debtors pursuant to 11 U.S.C. § 1301(a). (Dkt. No. 127). For the reasons that follow, the Court will deny the Motion in its entirety.

## I. BACKGROUND

In January 2012, Plaintiff Kennedy Funding, Inc., as Agent for Certain Co-Lenders, filed a debt and foreclosure action against Oracle, a Virgin Islands Limited Liability Company. Joseph Jagrup, Meinrad Jagrup, and Mary Jagrup also were named as Defendants because they were alleged to be members of Oracle as well as guarantors of Oracle's debt to Kennedy. (Dkt. No. 1 at ¶¶ 4-8). Kennedy alleged in its Complaint that in September 2008, Oracle executed a Promissory Note ("Note") to repay Kennedy $820,000, together with interest. *Id.* at ¶ 12. The Note was secured by a Mortgage and Security Agreement over commercial real estate owned by Oracle described as:

> Plot No. 73, Estate Castle Coakley, Queen Quarter, St. Croix, U.S. Virgin Islands consisting of 1.00 U.S. acre, more or less, as more fully shown and described on OLG Drawing No. 3260, dated March 12, 1976, and revised May 17, 1982

---

[1] The Jagrups filed a joint Voluntary Petition for Bankruptcy under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1300 *et seq.*, docketed in the Bankruptcy Court of the Virgin Islands as Case No. 1:17-bk-10002.

2

("Castle Coakley Property"). *Id.* at ¶ 14. Under the Security Agreement with Oracle, Kennedy also obtained a security interest in all accounts and property owned or thereafter acquired by Oracle whether or not affixed to the Castle Coakley Property. *Id.* at ¶ 18. Oracle's repayment obligation to Kennedy was further secured by a Mortgage and Security Agreement signed by the Jagrups against real property owned by them, described as:

> Plot No. 34, Estate Hope, Prince Quarter, St. Croix, U.S. Virgin Islands consisting of 1.29 acres, more or less, as more fully shown on OLG Drawing No. 5024 dated March 15, 1996

("Estate Hope Property"). *Id.* at ¶ 15. The Mortgages against the Castle Coakley Property and the Estate Hope Property both were recorded with the Recorder of Deeds for St. Croix on September 19, 2008. *Id.* at ¶¶ 14-15. In addition, Kennedy's interest in Oracle's accounts and personal property covered by the Security Agreement was perfected by the filing of a UCC-1 Financing Statement. *Id.* at ¶ 19.

Oracle defaulted on the loan and despite demand for payment, the default was not cured. *Id.* at ¶¶ 24, 25-27. Kennedy then filed the instant action against Oracle, its members and guarantors, as well as other Defendants who had or might have a claim against the mortgaged properties. *Id.*

After Defendants were served with process, Oracle file a Chapter 7 Bankruptcy proceeding in the Bankruptcy Court of the Virgin Islands, Case No. 1:12-bk-10012. Oracle's Bankruptcy Petition indicated that its debts were primarily "business debts" and that its primary asset was the Castle Coakley Property. (Case No. 1:12-bk-10012, Dkt. No. 1). Approximately six months later, the Bankruptcy Court entered an Order of Abandonment based on the Trustee's Notices of Abandonment of both the real property—*i.e.*, the Castle Coakley property—and personal property

3

of Oracle's bankruptcy estate. (Case No. 1:12-bk-10012, Dkt. Nos. 10, 13, 17). Oracle's bankruptcy case was closed on October 29, 2013. (Case No. 1:12-bk-10012, Dkt. No. 19).

In May 2017, this Court granted, in large part,[2] Kennedy's "Motion for Default and Summary Judgment" (Dkt. No. 100). The Court entered Default Judgment in favor of Kennedy against Oracle and the Jagrups, and summary judgment against other debtors and lienholders. (Dkt. No. 101 at 1-2). The Court further found that Kennedy held a first priority lien on the Castle Coakley and the Estate Hope properties. *Id.* at 2-3. Kennedy was awarded a judgment against Oracle and the Jagrups for an amount in excess of $1.9 million. *Id.* at 3. The Court foreclosed all liens against the Castle Coakley and the Estate Hope properties and ordered that both properties be sold by the United States Marshal at a public sale. *Id.* at 4-5. The Court issued a Writ of Execution and the two properties were seized by the Marshal on August 9, 2017. (Dkt. Nos. 121-123).

On October 3, 2017, the Jagrups jointly filed a Chapter 13 Bankruptcy Petition which was docketed in the Bankruptcy Court as Case No. 1:17-bk-10002. (Case No. 1:17-bk-10002, Dkt. No. 1). In their Bankruptcy Petition, the Jagrups identified the Estate Hope property as their residence and identified Jagrup Electric as their only sole proprietorship business. *Id.* at 2, 4. The Jagrups also stated in their Petition that their debts were *not* primarily "consumer debts"—defined as debts "'incurred by an individual primarily for a personal, family or household purpose.'" *Id*. at 8. Instead, the Jagrups reported that their primary debts were as a result of being guarantors. *Id*. at 8, 21. The Jagrups' property list included the Estate Hope property, undeveloped land in Kingshill and Frederiksted, as well as a multi-unit building in Estate Whim. *Id.* at 11-12. They also verified

---

[2] The Court denied, with prejudice, Kennedy's Motion for Default Judgment against Joseph Jagrup.

4

that they did not have any other property "of any kind" not listed in their Petition. *Id.* at 12. In Schedule H of the Petition, the Jagrups identified Joseph Jagrup and Oracle as co-debtors "who are also liable for any debts [the Jagrups] may have." *Id.* at 26.

In November and December 2017, the U.S. Marshal advertised the sale of the Castle Coakley property in newspapers of general circulation of the Virgin Islands. (Dkt. No. 124 at 1-2; 124-1). On December 18, 2017, the Marshal oversaw the public sale of the Castle Coakley property and filed a verified report that Kennedy, which bid $400,000 for the property, was the highest bidder at the sale. (Dkt. No. 124-7). In February 2018, Kennedy filed a "Motion for Order Confirming Sale" of the Castle Coakley Property. (Dkt. No. 124). On February 15, 2018, the Court issued an Order Confirming Sale and allowed Oracle and the Jagrups six months to redeem the property. (Dkt. No. 125).

The record in the instant case does not reflect that the Jagrups ever filed a Notice formally advising the Court that they had filed for bankruptcy. They did not file a motion to stay the Marshal's sale of the Castle Coakley property and did not object to the Marshal's Verified Return of Writ of Execution for Judicial Sale (Dkt. No. 124-7). Nor did the Jagrups file any opposition to Kennedy's Motion to Confirm Sale filed on February 9, 2018. (Dkt. No. 124).

Twelve days after the sale was confirmed, the Jagrups filed the instant "Motion to Vacate Sale & Order Confirming Sale of 73 Estate Castle Coakley" pursuant to Fed. R. Civ. P. 60(b)[3] and 11 U.S.C. § 1301(a). (Dkt. No. 126). In their Memorandum in Support, the Jagrups argue that the sale of the Castle Coakley property and the Order Confirming Sale were void because they violated

---

[3] The Jagrups do not identify which subsection of Rule 60(b) they claim applies in this case. In view of their argument that the sale of the Castle Coakley property and the Order Confirming Sale are void, the Court presumes the Jagrups are relying on Rule 60(b)(4) which permits a court to relieve a party from a judgment or order because the judgment is void.

the automatic stay embodied in 11 U.S.C. § 1301(a) in that Oracle—as a co-debtor of the Jagrups—was shielded from the consequences of the Court's Judgment—namely the sale of its property and the Order Confirming Sale. (Dkt. No. 127 at 3-5). The Jagrups also appear to take issue with the timing and the circumstances of the sale: (1) that the sale occurred less than three months after Hurricanes Irma and Maria damaged the property; (2) that it appeared that no other bidders were present at the sale;[4] and (3) that the price obtained for the property was unreasonably low and permitted Kennedy a windfall. *Id*. at 5.

Kennedy responded to the Jagrups' Motion to Vacate by arguing that it respected the Jagrups' bankruptcy by removing the Estate Hope property—the Jagrups' personal residence listed in their bankruptcy schedule—from the Marshal's Sale. (Dkt. No. 128 at 2). In countering the Jagrups' assertions that their bankruptcy stay extended to Oracle's commercial Castle Coakley property, Kennedy asserted: (1) that the Jagrups did not list the Castle Coakley property as an asset in its bankruptcy schedules; (2) that the Jagrups' attorney—who represented them in both the instant case and the bankruptcy case—received notice through the ECF system of the Writ of Execution and Motion to Confirm Marshal sale, but raised no objection at any stage of the process; and (3) that the automatic stay did not extend to Oracle or its property because the debts at issue were commercial debts, not "consumer debts" under 11 U.S.C. § 1301 and Oracle was not an "individual" subject to the co-debtor stay. *Id.* at 2-4. The Jagrups' Reply disputed Kennedy's claims and argued that Kennedy's collection of debts against Oracle had an immediate adverse impact on their bankruptcy estate. (Dkt. No. 131, at 2-5).

---

[4] The Jagrups fail to point to any evidence in the record that Kennedy was the only party present at the auction and the Court's record does not establish that as a fact.

## II. APPLICABLE LEGAL PRINCIPLES

The Jagrups' Motion to Vacate relies on Fed. R. Civ. P. 60(b) and 11 U.S.C. § 1301(a). The former permits a party, in specific circumstances, to ask the Court to relieve that party "from a final judgment, order or proceeding . . . ." Fed. R. Civ. P. 60(b). One of the bases for relief provided in the Rule is if "the judgment is void." Fed. R. Civ. P. 60(b)(4). "A judgment is void . . . only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Union Switch & Signal Div. American Standard Inc. v. United Elec., Radio and Mach. Workers of America, Local 610*, 900 F.2d 608, 612 n.1 (3d Cir. 1990) (citations omitted); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (a void judgment under Rule 60 is one "so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final.")

As a general rule, judgments or awards entered against a party after that party files for bankruptcy—such judgment thus having been entered in violation of the automatic stay—are void and of no effect. *Fleet Consumer Discount Co. v. Graves (In re Graves)*, 33 F.3d 242, 247 (3d Cir. 1994) (absent relief from the stay, judicial actions against the debtor are void *ab initio*); *see also In re Jones*, 604 B.R. 443, 455 (Bankr. W.D.Pa. 2019) (except for retroactive relief from a stay granted by court, arbitration award entered against debtor after bankruptcy filing would have been void *ab initio*).

In order to determine whether the Confirmation Order is void, the Court must examine the applicable bankruptcy statutes. After a debtor files a Chapter 13 petition, a creditor may not "act, or commence or *continue any civil action*, to collect all or any part of a *consumer debt of the debtor from any individual that is liable on such debt with the debtor*, or that secured such debt, unless . . ." certain statutory exceptions apply. *See* 11 U.S.C. § 1301(a) (emphasis added). For the

7

co-debtor stay to apply, (1) there must be an action to collect a consumer debt; (2) the consumer debt must be of the debtor, and (3) the action to collect must be against an individual that is liable on such debt with the debtor. *Smith v. Capital One Bank, N.A.*, 845 F.3d 256, 259 (7th Cir. 2016).

Acts in violation of the co-debtor stay, like acts in violation of the automatic stay under § 362, are generally held void. *Harris v. Margaretten & Co., Inc., (In re Harris)*, 203 B.R. 46, 50 (Bankr. E.D. Va. 1994), *aff'd*, 100 F.3d 950 (4th Cir. 1996). In the Third Circuit, acts taken in violation of the co-debtor stay are void or voidable unless validated by the retroactive annulment of the co-debtor stay. *See In re Myers*, 491 F.3d 120, 128 (3d Cir. 2007) (decision whether to retroactively annul the stay—thereby ratifying the acts which violated the automatic stay—is within the discretion of the bankruptcy court); *see also In re Morris*, 385 B.R. 823, 829 (E.D. Va. 2008) (recognizing bankruptcy court's authority to retroactively annul co-debtor stay based on the balancing of equities). Section 1301(c) authorizes a court to grant relief to a creditor from the co-debtor stay if it determines that "such creditor's interest would be irreparably harmed by continuation of such stay." 11 U.S.C. § 1301(c)(3).

### III. DISCUSSION

The legal basis for the Jagrups' "Motion to Vacate Sale & Order Confirming Sale of 73 Estate Castle Coakley" (Dkt. No. 126) is their claim that the sale occurred after they filed their joint petition for Chapter 13 bankruptcy. They assert that the automatic stay under Chapter 13 extended to its co-debtor, Oracle. Because the sale allegedly violated § 1301(a) by collecting a joint debt from a co-debtor after the debtor filed for bankruptcy, the Jagrups contend that the Sale and Order confirming the sale are void and may be set aside under Rule 60(b). (Dkt. No. 127 at 3-6).

In contrast, Kennedy contends that Rule 60(b) does not apply to the Order confirming the sale because that Order was not a final appealable order. (Dkt. No. 128 at 3-4). Alternatively, Kennedy argues that the co-debtor stay is inapplicable to Oracle's property. Kennedy asserts two bases for claiming the stay does not apply under the present facts: (1) because the underlying debt is not a "consumer debt" within the meaning of 11 U.S.C. § 1301(a); and (2) because Oracle, as a limited liability company, is not an individual and, thus, cannot by law be a co-debtor under Chapter 13. *Id.* at 4-5.

### A. Availability of Relief Under Rule 60(b)

In order to address the Jagrups' claims, the Court must first determine whether Rule 60(b) applies under the circumstances. In its response, Kennedy contends that Rule 60(b) is not applicable because the sale and order confirming sale are not "final" orders subject to Rule 60 relief. (Dkt. No. 128 at 3-4). *See State Nat'l Ins. Co. v. Cty. of Camden*, 824 F.3d 399, 406 (3d Cir. 2016) (explaining that Rule 60(b) generally only applies to final judgments). Instead, Kennedy claims that the appropriate standard is that under Fed. R. Civ. P. 72(a). *Id.* at 3.

Kennedy is mistaken in its reliance on Rule 72. While Rule 72 applies to "nondispositive matters," by its plain terms, it only applies to the review of *a Magistrate Judge's decision* in such nondispositive matters. Fed. R. Civ. P. 72(a) ("When a [nondispositive] pretrial matter . . . *is referred to a magistrate judge* to hear and decide, . . . the district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.") Because the Orders authorizing the Marshal Sale (Dkt. No. 101) and Confirming the Sale of the Castle Coakley Property (Dkt. No. 125) were issued by the District Court, Rule 72 does not apply.

Kennedy's argument also fails because the confirmation of a sale in a mortgage foreclosure proceeding is generally considered an order subject to a timely appeal or challenge under Rule 60. *See generally*, 55 AM. JUR. 2D *Mortgages*, § 675 (2019). Due to the unique nature of mortgage foreclosure proceedings, a court's various orders in a foreclosure case—orders determining priorities, foreclosing real property interests and directing sales, confirming sales, and entering deficiency judgments—are appealable although they occur at different stages of the case. *See Citibank, N. A. v. Data Lease Financial Corp.*, 645 F.2d 333, 337 (5th Cir. 1981) (foreclosure order directing the immediate sale of specified property is a final order for purposes of appeal); *see also United States v. Zimmerman*, 491 F. App'x 341, 347 n.8 (3d Cir. 2012) (foreclosure order may be challenged on appeal to determine the rights of all parties with interests in the property; appeal of confirmation order is permitted to determine whether the court had jurisdiction to order the sale); *see also Keb Hana Bank USA v. Red Mansion, LLC*, 763 F. App'x 256, 257 n.1 (3d Cir. 2019) (finding appellate court had jurisdiction to review district court's confirmation of a mortgage foreclosure sale); *Milligan v. Knodra*, 2004 WL 3383654, at *6 (D.V.I. Sept. 30, 2004) (litigant who fails to appeal from foreclosure order may find his right to appeal limited or barred).

Likewise, courts in various circuits have found that Rule 60(b) can be an appropriate vehicle to set aside orders alleged to have violated an automatic bankruptcy stay, either because such judgment was void or voidable. *See James v. Frame,* 2013 WL 1314746, at *1 (D.N.J. March 28, 2013) (judgment against Defendant entered after bankruptcy stay went into effect rendered the order void *ab initio* entitling Defendant to relief under Rule 60(b)); *Mink v. Baltimore Behavioral Health, Inc*., 2013 WL 3507314, at *3 (D.Md. July 10, 2013) (vacating the judgment under Rule 60(b)(4) entered in violation of bankruptcy stay); *cf. In re Sullivan*, 2013 WL 587323, at *1 (Bankr. D.N.J. Feb. 14, 2013) (Order directing release of government levy on debtor's funds could be set

aside under Rule 60(b)(4) when the Bankruptcy Court lacked jurisdiction over the United States due to lack of service on the government).

Thus, for the reasons set forth above, the Court rejects Kennedy's argument that the Jagrups cannot seek relief from the Order confirming sale of the Castle Coakley Property under Rule 60(b).

### B.   Applicability of the Automatic Stay

As discussed above, the Jagrups contend that the Court should vacate the Order Confirming Sale of the Castle Coakley Property because it allegedly violated the automatic stay extended to co-debtors under Chapter 13 of the Bankruptcy Code. (Dkt. No. 126).

The Bankruptcy Code grants a debtor filing for bankruptcy the protection of an automatic stay from the collection of its debts in order to "'give[] the debtor a breathing spell from its creditors.'" *In re Grossman's Inc.*, 607 F.3d 114, 122 (3d Cir. 2010) (quoting *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 200 (4th Cir. 1988)). Under Chapters 7 (liquidation) and 11 (reorganization) of the Code, the automatic stay does not apply to nonbankrupt co-debtors and does not prevent actions against loan guarantors. 11 U.S.C. § 362(a). Thus, under Chapters 7 and 11 proceedings, the automatic stay cannot be invoked by sureties, co-obligors, or others with a similar nexus to the debtor. *In re Roggio*, 612 B.R. 655, 666 (Bankr. M.D.Pa. 2020); *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991) ("the automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor").

Congress created an exception protecting some co-debtors in Chapter 13 cases—by providing a co-debtor stay to protect non-debtors who are jointly liable with a debtor on a consumer debt, or who guaranteed a debtor's consumer debt. *Maritime Electric Co., Inc.,* 959 F.2d at 1205 n. 9. The relevant statutory provision states: "A creditor may not act, commence, or continue any

civil action, to collect *all or any part of a consumer debt of the debtor* from any individual that is liable on such debt with the debtor, or that secured such debt." 11 U.S.C. § 1301(a) (emphasis added). The co-debtor stay applies by operation of law, and takes effect once a party, jointly liable on the debt, files for bankruptcy protection under Chapter 13. *Patti v. Fred Ehrlich, PC*, 304 B.R. 182, 187 (E.D.Pa. 2003). Section 1301(a) "[was] designed to protect a debtor operating under a Chapter 13 individual debtor repayment plan case by insulating him from indirect pressures from his creditors exerted through friends or relatives that may have cosigned an obligation of the debtor." H. R. Rep. No. 95-595, 95th Cong., 2nd Sess. 426, reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6381. The co-debtors stay under Section 1301(a) does not expire until the debtor's Chapter 13 "case is closed, dismissed, or converted." *In re Tarby*, 2012 WL 1390201, at *5 (Bankr. D.N.J. April 20, 2012) (quoting 11 U.S.C. § 1301(a)(2)).[5]

        **1.**    **Consumer Debts**

As Kennedy asserts—and the Jagrups' bankruptcy filings reflect—the debt Kennedy is collecting in this action does not constitute a "consumer debt" under the Bankruptcy Code. The Code defines "consumer debt" as "debt incurred by an individual *primarily for a personal, family, or household purpose*." 11 U.S.C. § 101(8) (emphasis added). Many courts have found that a mortgage on a residence is considered a "consumer debt" if the debt is for purposes of purchasing the home. *See In re Liegey*, 2009 WL 3817902, at *4 (Bankr. M.D.Pa. Nov. 13, 2009) (majority of courts have determined that purchase money mortgages on residential property and second mortgages "used for non-business purposes, such as consolidating other consumer debt or for home improvement, are consumer debts.") (citation omitted); *see also In re Kelly*, 841 F.2d 908,

---

[5] Approximately three months after the Motion to Vacate was filed, the Jagrups' bankruptcy petition was dismissed on the Trustee's motion because the value of the Jagrups' assets and debts exceeded the limits applicable to Chapter 13 debtors. (Case No. 17-bk-10002, Dkt. Nos. 41, 45).

913 (9th Cir. 1988) (mortgages against home for its purchase or equity line of credit for home improvements and repayment of credit card debts are "consumer debts")' *In re Johnson*, 115 B.R. 159, 162 (Bankr. S.D. Ill. 1990) (same); *In re Haugland*, 199 B.R. 125, 127 (condominium association fees for primary residence are "consumer debts" for purposed of Section 1301 stay).

However, if the loan secured by the property is for some purpose other than to pay off a purchase money mortgage, it may not be a "consumer debt." *See In re Cherrett*, 873 F.3d 1060, 1067-68 (9th Cir. 2017) (mortgage loan obtained through employer for employee's temporary residence for purposes of furthering career was not a "consumer debt"); *In re Matter of Booth*, 858 F.2d 1051, 1054 (5th Cir. 1988) (if mortgage is based upon "credit transaction involv[ing] a profit motive, it is outside the definition of consumer credit."); *In re Straughter*, 219 B.R. 672, 681-82 (Bankr. E.D. Pa. 1998) (when the proceeds from a mortgage loan are used for debtor's business, the loan is not a "consumer debt").

In determining whether a debt was primarily used for personal, family, or household purposes, an inquiry should be made as to why the debt was incurred. *Straughter*, 219 B.R. at 681-82 ("If the debt was incurred with a profit motive, it cannot be for family or household purposes and, therefore, does not qualify as a consumer debt."); *Patti,* 304 B.R. at 188 (finding debt for attorneys' fees incurred in obtaining a divorce was primarily for personal or family reasons and therefore a consumer debt). In this case, Kennedy's loan to Oracle, for which the Jagrups were guarantors, was for the company's business operations, not for "personal, family or household purposes." The Jagrups' own bankruptcy filings confirm their debts were not primarily "consumer debts." Because the debt for which Oracle was a co-debtor was not a consumer debt, the automatic stay protections of 11 U.S.C. § 1301(a) did not extend to Oracle or its property, *i.e.*, the Castle Coakley Property.

### 2. Individual Co-Debtors

Kennedy also argues that the co-debtor automatic stay does not apply because Oracle is not an "individual" under 11 U.S.C. § 1301(a). As noted above, the co-debtor stay provides that "[a] creditor may not act, commence, or continue any civil action, to collect all or any part of a *consumer debt* of the debtor *from any individual* that is liable on such debt with the debtor, or that secured such debt." 11 U.S.C. § 1301(a) (emphasis added). Noting that the Code defines "person" as "individuals, partnership[s], and corporation[s]", 11 U.S.C. §§ 101(41), and that only an "individual with regular income" can apply for bankruptcy under chapter 13, 11 U.S.C. § 109(e), several courts have held that corporations and other separate legal entities are not "individuals" protected by the co-debtor stay of Section 1301. *See In re McCormick*, 381 B.R. 594, 598-99 (Bankr. S.D.N.Y. 2008) (LLC is not eligible for the co-debtor automatic stay in a Chapter 13 proceeding); *see also In re Brines*, 2015 WL 3476695, at *3 (Bankr. D. Kan. May 28, 2015) (corporation owned solely by individual debtors is not entitled to the benefit of the co-debtor stay because corporation is not "individual"); *In re Saleh*, 427 B.R. 415, 420 (Bankr. S.D. Ohio 2010) (Chapter 13's co-debtor stay does not extend to corporations or other non-individuals). Although no cases could be found from courts in the Third Circuit, the reasoning in these cases is consistent with the narrow reading that courts in the Third Circuit have applied to Section 1301(a). *See, e.g., Straughter*, 219 B.R. at 681-82 (loan used for debtor's business not a "consumer debt"); *In re Izzi*, 196 B.R. 727, 730-31 (Bankr. E.D. Pa 1996) (debt resulting from tort liability not a "consumer debt"). The Jagrups have provided no authority to the contrary.

Thus, the Jagrups' claim that the sale of the Castle Coakley property belonging to Oracle violated the automatic stay for co-debtors under 11 U.S.C. § 1301 fails in two respects. First, the debt is not a "consumer debt," and second, the alleged co-debtor—Oracle—is not an individual.

Because the sale of the Castle Coakley Property did not violate the automatic bankruptcy stay resulting from the Jagrups' bankruptcy filing, the Marshal's Sale and Order Confirming Sale are not void, and thus are not subject to being set aside under Rule 60(b)(4).

### 3. Other Rule 60(b) Grounds for Relief

The Jagrups have failed to clearly articulate any alternative bases to set aside the Confirmation Order under any other provision of Rule 60(b). Although they challenge, in passing, the timing of the sale and the number of bidders that may or may not have been present (Dkt. No. 127 at 5), these conclusory allegations do not support any basis to claim mistake, inadvertence or surprise (Rule 60(b)(1)), newly discovered evidence (Rule 60(b)(2)), or any other reason that justifies relief (Rule 60(b)(6)). Although the Jagrups claim Kennedy received a windfall due to its bid of $400,000 allegedly being too low for the true value of the property, this conclusory and unsupported assertion is likewise insufficient to warrant relief under Rule 60(b).[6]

The Court's conclusion that the Jagrups are not entitled to relief under Rule 60(b) is further supported by their failure to: (1) notify the Court of their individual bankruptcy proceeding; (2) assert any type of claim prior to the Marshal's Sale or the Confirmation Order which reflected their belief that the bankruptcy stay extended to the Castle Coakley property; and (3) timely respond to the Motion to Confirm the Sale. Deliberate or strategic choices are insufficient to warrant relief under the "any other reason that justifies relief" language of Rule 60(b)(6). *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008) (relief under Rule 60(b)(6) requires a showing of

---

[6] It is difficult to see how Kennedy could predict that, after the properties were seized and before the sale, Hurricanes Irma and Maria would occur and cause devastating damage throughout the Virgin Islands, both to property and to the economy. The Jagrups further fail to cite to any legal authority that obligates a creditor such as Kennedy to further delay collecting on its debt, in which Oracle and the Jagrups had been in default since at least 2012, in order to wait for a possibly better real estate market.

"extraordinary circumstances" and not circumstances arising from a party's "deliberate choices"); *Smart v. Kraft*, 2016 WL 5219581, at *2 (D.N.J. Sept. 21, 2016) (strategic choices in claims included in amended complaint insufficient to warrant relief under 60(b)(6)). Thus, the Jagrups have failed to provide any support for their claim for relief.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny the Jagrups' "Motion to Vacate Sale & Order Confirming Sale of 73 Estate Castle Coakley." (Dkt. No. 126).

An appropriate Order accompanies this Memorandum Opinion.

Date: July 29, 2020         _____/s/_____
                                         WILMA A. LEWIS
                                         Chief Judge